Joseph G. Pia (9945) (joe.pia@piahoyt.com)
John P. Mertens (14522) (jmertens@piahoyt.com)
Scott R. Hoyt (14558) (shoyt@piahoyt.com)
Adam L. Hoyt (13463) (ahoyt@piahoyt.com)
Ciera C. Archuleta (17159) (carchuleta@piahoyt.com)
PIA HOYT, LLC
136 E. South Temple, Suite 1900
Salt Lake City, Utah 84111
Telephone: (801) 350-9000
Facsimile: (801) 350-9010

*Attorneys for Plaintiff Gabb Wireless, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GABB WIRELESS, INC. a Delaware Corporation, <br><br> Plaintiff, <br> v. <br><br> TROOMI WIRELESS, INC, a Delaware Corporation; and WILLIAM BRADY, an individual; DAVID L. PREECE, an individual, <br><br> Defendants. | **MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS** <br><br> Case No. 2:21-cv-00253-TC-DAO <br><br> Judge Tena Campbell <br><br> Magistrate Judge Daphne Oberg |

Plaintiff, Gabb Wireless, Inc., ("**Gabb**"), by and through the undersigned counsel, and pursuant to DUCiv 7-1(b), hereby submits this Memorandum in Opposition to Motion to Dismiss ("**Opposition**").

## I.   INTRODUCTION

Defendants' Motion to Dismiss ("**Motion**") views this dispute as if it were between independent parties who created and developed the contested "Troomi" mark in tandem. It sets aside the crucial factor in this case – that Defendant William Brady ("**Brady**"), working for hire, created this mark for Gabb. While an independent creator of the mark might have a superior claim to Gabb if it began using the mark first in commerce, efforts Brady undertook to use the mark were done on behalf of Gabb, and subject to an assignment. By creating this mark for hire, and agreeing to assign ownership of it to Gabb, Brady cannot simply re-create the mark for Defendants and act as if he were the first user.

Defendants' argument is based upon this premise – once the Court recognizes that Defendant Troomi Wireless, Inc. ("**Troomi**") did not independently develop this mark, but rather used intellectual property it had already assigned away, the balance of the arguments in the Motion fall away. Consumer confusion is obvious from the pleadings – Gabb seeks to advertise and sell its "Troomi" kid-safe smartphone and smartwatch devices and applications, while Troomi sells its own kid-safe smartphone devices and applications under the "Troomi" name. Troomi's advertisements falsely suggest, by use of the "Troomi" name, that they are in some manner affiliated with Gabb's "Troomi" line of products and services. Gabb's competitive injury is that it cannot launch its "Troomi" products into a market where Troomi competes without generating name recognition for Troomi, and further confusion between the source of its own products and those of Troomi's products in the same market.

Defendants correctly note that the "work for hire doctrine" is an aspect of copyright law. However, from that premise, Defendants draw the conclusion that a trademark can never be assigned. Instead, what has occurred is that Brady developed intellectual property for hire on behalf of Gabb, took it to the Defendants, is using it as if it were the property of the Defendants, and is generating false advertising and consumer

confusion between Gabb's Troomi product and Troomi itself. In similar situations, Courts have imposed a constructive trust on the trademark, transferring it to the rightful owner, and enforcing prohibitions against its use against the wrongdoers – in this case Brady and the other Defendants. On that basis, the Court should deny this motion.

## II.    FACTUAL BACKGROUND

1.      Gabb approached Xponential, Inc., d/b/a/ EKR ("**EKR**") to design marketing materials, which included trademarks. [Complaint, ¶ 2.]

2.      At the time Gabb approached EKR, Brady was EKR's President. [Complaint, ¶ 16.]

3.      In the Website Design and Development Agreement, incorporated by paragraph 21 and 22 of the Complaint, EKR agrees that "all selected final materials, artwork and/or digital deliverables produced by Vendor, its employees, agents or assistants specifically for Client will be owned by Client." [Complaint, ¶ 22, WDD, p. 46.]

4.      Brady created the Troomi mark for Gabb. [Complaint, ¶¶ 19, 33.]

5.      Gabb's intent is to use the Troomi mark in its expansion of technological devices that are safe for children. [Complaint, ¶¶ 47, 55.]

6.      Brady attempted to remove the Troomi mark from Gabb's records. [Complaint, ¶ 34.]

7.      Troomi also uses the Troomi mark. [Complaint, ¶¶ 4, 32, 57, 58.]

8.      Troomi uses the mark to offer kid-safe technology on wireless devices, mobile and cellular phones, and smart watches. [Complaint, ¶ 47.]

9.      With both companies using the Troomi mark, consumers cannot tell whose products were made by whom. [Complaint, ¶¶ 59-62, 69, 73-75.]

III.    **LEGAL ANALYSIS**

Troomi's argument begins by assuming that Troomi and Gabb independently developed the Troomi mark, and that Troomi beat Gabb to the market and used it first. In support of this argument, Troomi states in its Concise Statement that "Gabb alleges that it 'owns' the Troomi mark because it believes it hired someone to brainstorm new names…" [Motion, at p. 2]. Gabb didn't hire "someone," it hired Brady, a principal of Troomi. This is not a case of the parties racing their similar trademarks to market, but a case of Brady generating intellectual property for hire on behalf of Gabb, then using it to start his own company Troomi, despite having assigned his rights to Gabb.

A.    **The Legal Standard on a Motion to Dismiss.**

Defendants have correctly noted that a claim must be plausible to survive a motion to dismiss. In this standard, " 'plausible' cannot mean 'likely to be true.' Rather, … The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). "In applying these general standards to a § 1 claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest [actionable conduct.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Thus, as Plaintiff does here, it must cite factual matter (such as the development and use of the trademarks), taken to be true by the Court, which demonstrates that Troomi's principal Brady developed the Troomi mark for Gabb, before appropriating it back to use for himself with his new venture Troomi.

B.    **Cases Cited by Troomi on the First Use Principle are Inapposite.**

Troomi cites cases supporting the notion that the first user of a trademark owns it. Where the competing parties independently develop the mark, this is not in question. As shown, however, the unique issue of this case was not analyzed or addressed in the Motion. Troomi notes "[i]t is a bedrock principle of trademark law that trademark

ownership is not acquired by federal or state registration, but rather from prior appropriation and actual use in the market." *BetterBody Foods & Nutrition, LLC v. Oatly AB & Oatly, Inc.*, 2020 WL 6710433, at *3 (D. Utah Nov. 16, 2020) (*quoting S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660, 665 (7th Cir. 2016) (internal citations and formatting omitted)). However, the *Oatly* case involved a dispute between "one party [who] claims common law ownership of a mark as an affirmative defense against another party's claim that it federally registered the same. *Ibid.* Nothing in the cited cases suggests that the principle applies in this manner when one person develops a trademark for another, then secretly registers it and begins to use it.

### C. Gabb is the Owner of the Troomi Trademark

Gabb's claim to the "Troomi" mark is superior to Troomi's claim, because Gabb paid for its creation, and Brady, who brought the mark to Troomi, did so in secret, working against Gabb. These facts support a constructive trust over any rights Troomi might possess in the mark, in favor of Gabb. According to Troomi, the only question on trademark ownership is first use, but this question ignores the situation present here where Brady came up with the mark and assigned it to Gabb. "Parties may validly assign trademarks…" *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 679 F. Supp. 2d 312, 327 (E.D.N.Y. 2010) (citing *George W. Luft Co. v. Zande Cosmetic Co.*, 142 F.2d 536, 541 (2d Cir. 1944)). Where a registrant uses deceptive practices, Courts do not blindly follow the first-use principle. "Despite outwardly acting as if the trademark were Lurzer's, however, American Showcase quietly registered the mark in its own name, an act which it chose not to divulge and which did not become known to Lurzer until 1997." *Lurzer GMBH v. Am. Showcase, Inc.*, 75 F. Supp. 2d 98, 106 (S.D.N.Y. 1998) "Where a party attempts to wrest control of a trademark from a partner … by secretly registering the mark in its own name, courts have imposed a constructive trust in favor of the

partner.[1] Here, American Showcase's inequitable conduct requires the same remedy."
*Ibid*. (assigning trademark to wronged party). "Judge Palmieri found that both Punzi and
Trivulzio, as successive Directors General of the Italian corporation, knew that the
American corporation owned the trademarks … These findings … justify the imposition
of a constructive trust on the trademarks in favor of the American corporation." *Columbia
Nastri & Carta Carbone, S/P/A v. Columbia Ribbon & Carbon Mfg. Co.*, 367 F.2d 308, 311 (2d
Cir. 1966). Faced with deceptive practices, "the Court finds there to be enough evidence
to conclude that UNC-NM succeeded UNC-FL and has right to the trademark and
copyright." *Strobel v. Rusch*, No. CIV 1:18-00656-RB-JFR, 2020 U.S. Dist. LEXIS 233676, at
*50 (D.N.M. Dec. 11, 2020). The facts in that case were:

> Mr. Strobel sent an email to all members confirming that the transfer
> of the trademark by Dr. Rusch to UNC-FL had been initiated …
> Eventually, though, Dr. Rusch receive[d] a letter from WIPO stating
> that the trademark would expire if not renewed. [citation.] It soon
> became apparent to all parties that the V.I.P. mark had not been
> transferred to UNC-FL. [citation.] In the end, the trademark was
> never transferred to UNC-FL, and in 2017 Dr. Rusch renewed the
> registration of the mark in her name. *Id.*, at *4-5.

In the Website Design and Development Agreement, incorporated by paragraph
21 and 22 of the Complaint, EKR agrees that "all selected final materials, artwork and/or
digital deliverables produced by Vendor, its employees, agents or assistants specifically
for Client will be owned by Client." [Complaint, ¶ 22, WDD, p. 46.] This means that,
through his company EKR, Brady agreed that any rights he had to the mark were
assigned to Gabb. Thus, to the extent Brady had any rights to the mark to bring to the
other Defendants, they were subject to the assignment in favor of Gabb. Based on the

---

[1] Citing *Blue Cross & Blue Shield Ass'n v. Group Hospitalization & Med. Services*, 744 F. Supp.
700, 720-1 (E.D.Va. 1990); *cf. Columbia Nastri & Carta Carbone v. Columbia Ribbon & Carbon
Manufacturing Co.*, 367 F.2d 308, 311 (2d Cir. 1966). This case involved an effort to
surreptitiously obtain foreign trademark rights; the situation is analogous, and the
remedy is applicable here.

cases cited above, the Court should transfer the trademark to Gabb via a constructive trust.

**D.      Gabb Pleads Claims Under §1125(a)(1)(A) in the First and Second Causes of Action.**

The elements of a Lanham Act claim are: "(1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product . . . (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another . . . and (4) injure the plaintiff." *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999). This is broader than it seems, as "the Lanham Act encompasses more than literal falsehoods, because otherwise, clever use of innuendo, indirect intimations, and ambiguous suggestions could shield the advertisement from scrutiny precisely when protection against such sophisticated deception is most needed." *Ibid.* (cleaned up) (citing *American Home Prods. Corp. v. Johnson & Johnson*, 577 F.2d 160, 165 (2d Cir.1978)).

Gabb pleads that it is using the "Troomi" mark in its expansion of technological devices that are safe for children. [Complaint, ¶ 55.] Gabb further pleads that Troomi uses the same mark. [Complaint, ¶ 57.] Defendant Troomi, by using the name "Troomi" in its promotional materials [see Complaint, ¶ 58,] causes the public to believe that its goods and services are affiliated with the name "Troomi." However, as the superior owner of the mark "Troomi," Gabb's "Troomi" line are the goods and services that the public should associate with the name "Troomi." By using Gabb's mark, Troomi suggests a false origin of its goods, *i.e.*, that they are coming from Gabb. It also provides a false statement of fact (or at least an ambiguous suggestion) that these goods originate with Gabb and are part of Gabb's "Troomi" line.

Troomi supplies an overly literal reading of the Complaint, suggesting that what Gabb complains of is not confusion concerning the origin of goods, but confusion

concerning the affiliation of the mark. However, the statute prohibits the use of a trademark that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin … of his or her goods." [15 USC 1125(a)(1)(A).] Thus, confusion as to the association (or lack thereof) between Gabb and Troomi is sufficient. Between the language of the statute, and the *American Home* precedent adopted in the Tenth Circuit by *Cottrell*, this use of the "Troomi" name by Troomi causes confusion with the goods and services marketed under Gabb's "Troomi" mark.

### E. Analysis of Confusion

"The Tenth Circuit has identified six factors, derived from the Restatement of Torts § 729 (1938), that aid in determining whether a likelihood of confusion exists between two marks:

> (a) the degree of similarity between the marks;
>
> (b) the intent of the alleged infringer in adopting its mark;
>
> (c) evidence of actual confusion;
>
> (d) the relation in use and the manner of marketing between the goods or services marketed by the competing parties;
>
> (e) the degree of care likely to be exercised by purchasers; and
>
> (f) the strength or weakness of the marks."
>
> *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089–90 (10th Cir. 1999).

Most of these factors feature prominently in the Complaint. The marks are identical – both "Troomi." [Complaint, ¶¶ 2, 4, 19.] The intent was to usurp the "Troomi" mark from Gabb. [Complaint, ¶¶ 4, 32, 33, 34.] Confusion is occurring. [Complaint, ¶¶ 59-62, 69, 73-75.] The names are used almost identically. [Complaint, ¶¶ 46, 47.]

The strength of the mark is very high. This is measured along "five categories of marks (from least to most distinctive): (1) generic …; (2) descriptive, … (3) suggestive, …; (4) arbitrary, meaning that the mark is a word or symbol already in common use that does not have any apparent relation to the product (as in Apple computers); and (5) fanciful, meaning that the mark is a novel word or design that has been coined for the sole purpose of serving as a trademark (as in Kodak or Exxon)." *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1152 (10th Cir. 2013) (citing *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 975-6 (10th Cir. 2002)). "Unlike descriptive marks, suggestive, fanciful, and arbitrary marks are considered inherently distinctive and need not acquire secondary meaning to warrant protection as trademarks." *Id*. (cleaned up).

This strength, coming from the fanciful nature of "Troomi" "can be important in several contexts. For example, if the mark is particularly strong, use of that mark by another can give rise to likelihood of confusion even if the use occurs in connection with a totally distinct product line." *Water Pik, supra,* 726 F.3d 1136, 1151. The fanciful nature suggests that even with careful consumers, the Court should stop anyone from using Troomi, even on unrelated products. Here, the products are direct competitors – kid-safe wireless technology.

F.      **The Competitive Injury**

Troomi attempts to use the speed with which it appropriated Gabb's trademark to its advantage by claiming there is no competitive injury. Troomi began its advertising before Gabb attempted to roll out its "Troomi" line. However, by permitting Troomi to use this name, Gabb will never be able to invest in a product launch under this name without simultaneously promoting a competing product: that made by Troomi.

IV.   **CONCLUSION**

For the reasons set forth herein, this Court should deny the Motion.

DATED this 30th day of August 2021.

PIA HOYT, LLC


/s/ Joseph G. Pia
Joseph G. Pia
John P. Mertens
Scott R. Hoyt
Ciera C. Archuleta

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of August 2021, I caused a true and correct copy of the foregoing **MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS** to be filed with the Court and served upon all counsel of record using the Court's electronic filing system.

/s/ *Megan Kitchens*
Paralegal