IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| GABB WIRELESS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>TROOMI WIRELESS, INC., a Delaware corporation; WILLIAM BRADY, an individual; and DAVID L. PREECE, an individual,<br><br>Defendants. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 2:21-cv-253-TC-DAO |

Plaintiff Gabb Wireless, Inc. (Gabb) brings six causes of action, including two claims that Defendants Troomi Wireless, Inc., William Brady, and David Preece violated its rights under the Lanham Act in connection with the trademark "Troomi."  Defendants have filed a Rule 12(b)(6) motion to dismiss the Lanham Act claims, in which they assert that Gabb's own allegations show Gabb does not own the trademark.  The court agrees.  Because ownership is an essential element of Gabb's Lanham Act claims, the court grants the motion to dismiss those claims.

## FACTUAL ALLEGATIONS[1]

Gabb Wireless, which provides a nationwide cellular network and smartphones that are

---

[1] When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must take all well-pled facts as true and construe them in a light most favorable to the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

safe for children and teenagers, asserts it owns the "Troomi" trademark.  According to Gabb, Troomi Wireless, Inc., registered and is using the trademark in bad faith through the actions of individual defendants William Brady and David Preece, who are principals of Troomi Wireless.

The relevant events began in 2018.  At the time, Mr. Brady was the President and a director of the company Xponential, Inc. d/b/a EKR ("EKR") when entrepreneur Stephen Dalby (a founder of Gabb) hired EKR to assist with his start-up business Tyndale Technology (Tyndale later became Gabb Wireless).  EKR is a consulting firm that assist startups with business strategy, marketing, creative services, and technology infrastructure.

When Mr. Dalby first described his business plan to EKR principals, he invited them to participate in the new company as founding partners.  He then incorporated Tyndale in September 2018.  The articles of incorporation listed him as President and three individuals, including Mr. Brady, as officers and directors.

In November 2018, Tyndale hired EKR to come up with potential names for the new company.  EKR proposed "Gabb" and "Troomi."

In 2019, the two companies entered into an agreement providing that "all selected materials, artwork, and/or digital deliverables produced by EKR, its employees, agents or assistants" for Gabb would be "work for hire."  (Compl. ¶ 22, ECF No 2.)  That agreement, says Gabb, supports its assertion that it is the "true and rightful owner of the mark 'Troomi.'"  (Id.)

In 2020, Mr. Brady cut ties with Gabb and formed Troomi Wireless with Mr. Preece. Gabb alleges that Mr. Brady took steps to hide his intention to compete directly with Gabb and to circumvent Gabb's asserted right to the mark.  In support, Gabb recites a string of actions Mr. Brady took to accomplish that goal.

For instance, in April 2020, Mr. Brady accessed EKR's Google Docs account, which contained the confidential 2018 proposal EKR presented to Tyndale as part of the "naming project."  Mr. Brady also restricted others' access to the proposal.  On May 6, 2020, he deleted the confidential EKR files.

According to Gabb, on May 5, 2020 (one day before Mr. Brady deleted the files), he "surreptitiously filed an application with the United States Patent and Trademark Office ('USPTO') to falsely, fraudulently, and in bad faith trademark the original mark 'TROOMI' for a business that related to 'Cell phones; Smartphones; Tablet computers' with ownership purportedly vesting in Brady and his collaborators and assigns."  (Id. ¶ 31 (referring to Mr. Preece's and Mr. Brady's Trademark/Service Mark Application, attached as Ex. A to Compl., ECF No. 6-1).)  In that application, both Mr. Preece and Mr. Brady declared their intent to use the "Troomi" mark in commerce in the future.  (Brady and Preece May 5, 2020 Trademark/Service Mark Application at pp. 3, 6, attached as Ex. A to Compl., ECF No. 6-1.)  On February 24, 2021, the USPTO issued a notice of publication of Troomi Wireless's mark.  (Feb. 24, 2021 Official USPTO Notice of Publication Under 12(a), attached as Ex. B to Compl., ECF No. 6-2.)  And on March 16, 2021, the USPTO issued its publication confirmation.  (Mar. 16, 2021 USPTO *Trademark Official Gazette* Publication Confirmation, attached as Ex. C to Compl., ECF No. 6-3.)

Troomi Wireless directly competes with Gabb.  In fact, Troomi Wireless uses the Troomi mark in a business model almost identical to Gabb's business model.

Gabb discovered Troomi's competition in March 2021, when a person affiliated with Gabb saw an Instagram page for Troomi Wireless, which listed Mr. Brady as the owner.  In April 2021, Gabb discovered a LinkedIn page for Troomi Wireless, which represented itself as a

company that provides safe ways to introduce children to smartphones.  Gabb also discovered

that Troomi Wireless operates a website, troomi.com, in which it makes the same

representations.

On March 31, 2021, after Gabb discovered the existence of Mr. Brady's company and its

use of the "Troomi" mark, Gabb filed its own "intent to use" trademark registration application.

Gabb sought to trademark the name "Troomi" for "'downloadable electronic game software for

kids for use on wireless devices, mobile and cellular phones, and smart watches.'"  (Compl. ¶ 47

(quoting Gabb Mar. 31, 2021 Trademark/Service Mark Application at p. 4, attached as Ex. D to

Compl., ECF No. 6-4).)  After it submitted its application, Gabb filed this lawsuit.

## ANALYSIS

Gabb alleges six causes of action: two violations of the Lanham Act against all three

Defendants, three claims for violation of the federal statute governing unauthorized access to

protected computer files (alleged only against Mr. Brady), and a request for a declaratory

judgment stating that Gabb owns the trademark at issue.  Only the Lanham Act claims are at

issue here.

### Standard of Review

Federal Rule of Civil Procedure 12(b)(6) requires dismissal if the complaint fails to state

a claim upon which relief can be granted.  The court must accept all well-pled factual allegations

as true and construe them in the light most favorable to the nonmoving party.  Strauss v. Angie's

List, Inc., 951 F.3d 1263, 1267 (10th Cir. 2020).  That rule does not apply to legal conclusions.

Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  "Mere 'labels and conclusions,' and 'a

formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer

specific factual allegations to support each claim."  Kansas Penn Gaming, LLC v. Collins, 656

F.3d 1210, 1214 (10th Cir. 2011) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555

(2007)).  "[T]o withstand a motion to dismiss, a complaint must have enough allegations of fact,

taken as true, 'to state a claim to relief that is plausible on its face.'"  <u>Id.</u> (quoting <u>Twombly</u>, 550

at 570).

**<u>False Association Claims</u>**

Gabb brings its two Lanham Act claims under 15 U.S.C. § 1125.  That section, titled

"False designations of origin, false descriptions, and dilution forbidden," "creates two distinct

bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)."

<u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 572 U.S. 118, 122 (2014).

The "false association" provision, subsection (A), imposes liability on:

> [a]ny person who, on or in connection with any goods or services, … uses in
> commerce any word, term, name, symbol, or device, or any combination thereof,
> or any false designation of origin, false or misleading description of fact, or the
> false or misleading representation of fact, which is likely to cause confusion, or to
> cause mistake, or to deceive as to the affiliation, connection, or association of
> such person with another person, or as to the origin, sponsorship, or approval of
> his or her goods, services, or commercial activities by another person[.]

15 U.S.C. § 1125(a)(1)(A).  The "false advertising" subsection imposes liability for use of a

mark "in commercial advertising or promotion, [that] misrepresents the nature, characteristics,

qualities, or geographic origin of his or her or another person's goods, services, or commercial

activities[.]"  15 U.S.C. § 1125(a)(1)(B).

Although the complaint does not clearly indicate which subdivision Gabb relies on, Gabb's

opposition memorandum clarifies that it brings both claims under § 1125(a)(1)(A), not

subsection (B).  "Gabb Pleads Claims Under §1125(a)(1)(A) in the First and Second Causes of

Action." (Pl.'s Opp'n Mem. at 7, ECF No. 22.)

Gabb asserts that Defendants have violated § 1125(a)(1)(A) because Troomi Wireless's

use of the mark in commerce is resulting in consumer confusion.

> Consumer confusion is obvious from the pleadings – Gabb seeks to advertise and
> sell its 'Troomi' kid-safe smartphone devices and applications under the 'Troomi'
> name.  Troomi's advertisements falsely suggest, by use of the 'Troomi' name, that
> they are in some manner affiliated with Gabb's 'Troomi' line of products and
> services."

(Id. at 2.)  (See also Compl. ¶¶ 73–74 (alleging Defendants' use of the Troomi mark "has

caused and/or will cause [mistake and deception] as to Defendants' association,

connection, and/or affiliation with Plaintiff Gabb Wireless and its original mark,

'Troomi.'").)

Under § 1125(a)(1)(A), "the owner of any valid mark, registered or not," may recover

from a defendant if the plaintiff has a protectable interest in the mark, the defendant used an

identical or similar mark in commerce, and the defendant's use of the mark is likely to confuse

consumers.  1-800 Contacts, Inc. v. Lens.com, 722 F.3d 1229, 1238 (10th Cir. 2013).  Troomi

asserts the court must dismiss Gabb's § 1125(a)(1)(A) claims because Gabb has alleged neither

ownership of a valid and legally protectable mark nor likelihood of confusion.

Ownership of the mark is a pre-requisite to success under § 1125(a)(1)(A).  For the

reasons set forth below, the court finds that Gabb's allegations do not support Gabb's assertion

that it owns the Troomi mark, and, accordingly, Gabb has not stated a claim for relief under the

Lanham Act.

For an inherently distinctive mark like "Troomi," the party who first uses the term as a

mark in the sale of goods is the owner.

> The cases are legion to the effect that for inherently distinctive marks, ownership
> is governed by priority of use.  For such marks, the first to use a designation as a
> mark in the sale of goods is the "owner" and the "senior user."  These marks are
> given legal protection against infringement immediately upon adoption and use in
> trade:  "A technical trademark, consisting of a coined or fanciful expression,
> comes into being as soon as it is affixed and the goods are sold."

2 McCarthy on Trademarks & Unfair Competition § 16:4 (5th ed. 2021) (emphasis added; footnotes omitted).

Case law has firmly established this "priority of use" rule, which applies whether or not the party registered the mark with the USPTO.  "It is well established that the standard test of ownership is priority of use. 'The user who first appropriates the mark obtains an enforceable right to exclude others from using it, as long as the initial appropriation and use are accompanied by an intention to continue using the mark commercially.'"  Threeline Imports, Inc. v. Vernikov, 239 F. Supp. 3d 542, 557–58 (E.D.N.Y. 2017) (quoting La Societe Anonyme des Parfums le Galion v. Jean Patou, 495 F.2d 1265, 1270 (2d Cir. 1974).)  See also, e.g., S.C. Johnson & Son, Inc. v. Nutraceutical Corp., 835 F.3d 660, 665 (7th Cir. 2016) ("It is a bedrock principle of trademark law that trademark ownership is not acquired by federal or state registration, but rather from prior appropriation and actual use in the market.") (internal citations and alterations omitted), quoted in BetterBody Foods & Nutrition, LLC v. Oatly AB & Oatly, Inc., No. 2:20-cv-00492-DAK, 2020 WL 6710433, at *3 (D. Utah Nov. 16, 2020).

Gabb's allegations do not establish priority of use.  Gabb does allege it "is using the original mark, 'Troomi,' in commerce as part of its continued expansion of technological devices that are safe for children."  (Compl. ¶ 55; see also id. ¶ 136 (alleging that Gabb "intends to use/and is using the mark, Troomi, in commerce as part of its continued expansion in technological devices that are safe for children.").)  But Gabb does not allege it used the mark in commerce before Troomi Wireless did.  In fact, Gabb's allegations suggest that Troomi began using the mark in product advertisements before Gabb did.  (See id. ¶ 43 (Troomi Wireless had an Instagram page as of March 2021, the same month Gabb filed its "intent to use" application),

7

¶ 45 (Troomi Wireless had a LinkedIn page as of April 2021); ¶ 46 (as of April 2021, Troomi Wireless was operating a website using "Troomi" in its advertising).)

Additionally, Gabb's and Troomi's "intent to use" applications to the USPTO indicate that Gabb did not use the mark in commerce before Troomi.  Gabb's trademark registration application shows that on March 31, 2021, Gabb declared its intention under 15 U.S.C. § 1051(b) to use the mark in commerce in the future:  "The applicant [Gabb] has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date on or in connection with the goods/services in the application[.]"  (Gabb Mar. 31, 2021 Trademark/Service Mark Application at pp. 2, 5, attached as Ex. D to Compl., ECF No. 6-4.)  Its application post-dated not only Mr. Preece's and Mr. Brady's May 5, 2020 trademark registration application (in which they too declared an intent to use the mark in commerce), but also the USPTO's subsequent Publication Confirmation dated March 16, 2021. (See Brady and Preece May 5, 2020 Trademark/Service Mark Application at pp. 3, 6, attached as Ex. A to Compl., ECF No. 6-1; Mar. 16, 2021 USPTO *Trademark Official Gazette* Publication Confirmation, attached as Ex. C to Compl., ECF No. 6-3.)  Accordingly, a comparison of the two applications indicates that Troomi used the mark in commerce first.

Despite the prior use rule, Gabb premises its Lanham Act claims on rights it obtained through its contract with EKR:

> While an independent creator of the mark might have a superior claim to Gabb if it began using the mark first in commerce, efforts Brady undertook to use the mark were done on behalf of Gabb, and subject to an assignment.  By creating this mark for hire, and agreeing to assign ownership of it to Gabb, Brady cannot simply re-create the mark for Defendants and act as if he were the first user.

(Pl.'s Opp'n at 2.)  To Gabb, EKR's design of the Troomi mark in conjunction with EKR's contract with Gabb created a protectable interest in the mark.

Gabb then contends that Mr. Brady's actions usurped Gabb's right to the mark and that such bad faith actions give Gabb a remedy under the Lanham Act.  According to Gabb, "Where a registrant uses deceptive practices, Courts do not blindly follow the first-use principle."  (Id. at 5.)

In support, Gabb cites the Southern District of New York decision in Lurzer GMBH v. American Showcase, Inc., 75 F. Supp. 2d 98 (S.D.N.Y. 1998).  In Lurzer, the German publisher (Lurzer) of "International Archive" magazine sued the American-based seller of the magazine's English-language version for, among other things, trademark infringement.  Unbeknownst to Lurzer, American Showcase had registered the "Archive" mark in the United States.  After the registered mark had become incontestable, Lurzer discovered the registration and subsequently sued.

The issue of infringement went to trial.  After the jury found that American Showcase had infringed the "Archive" mark, the district court addressed Lurzer's motion for assignment of the mark's federal registration to Lurzer.  The court noted that the jury found American Showcase used the Archive trademark to misrepresent the source of goods or services.  Id. at 105 ("[T]he jury's finding of infringement was necessarily predicated on the fact that American Showcase used that trademark to misrepresent the source of [the magazine Klik!].").  Based on that "improper use of the trademark," the court found the mark was not incontestable and could "be canceled or assigned by the Court pursuant to its powers under [15 U.S.C. § 1119]."  Id.

The court determined that assignment was the preferable course of action based on the defendant's bad faith conduct:

> Despite outwardly acting as if the trademark were Lurzer's, ... American
> Showcase quietly registered the mark in its own name, an act which it chose not
> to divulge and which did not become known to Lurzer until 1997.  Thus, it was

> through a pattern of deceit that American Showcase was able to obtain the
> registration and possess it until 1997 without inviting a challenge from Lurzer.

Id. at 106.  Gabb focuses on the Lurzer court's next comment:  "Where a party attempts to wrest control of a trademark from a partner in a different country by secretly registering the mark in its own name, courts have imposed a constructive trust in favor of the partner.  Here, American Showcase's inequitable conduct requires the same remedy."  Id. (internal citation omitted).  According to Gabb, the Lurzer court's assignment of a registration obtained in bad faith is an appropriate remedy here as well.

Lurzer is inapposite.  During the Lurzer trial proceedings, the jury found American Showcase had infringed Lurzer's Archive mark.  After trial, the court used its powers under the Lanham Act to remedy harm to Lurzer's rights to the mark.  See id. (citing Blue Cross & Blue Shield Ass'n v. Group Hospitalization & Med. Servs., 744 F. Supp. 700, 721–21 (E.D. Va. 1990) (applying same remedy to protect rights of a party that already owned the mark)).  Gabb does not allege any facts showing it has a trademark for the court to protect.  Accordingly, the remedy provided in Lurzer is not an appropriate remedy under the circumstances pled here.

Priority of use determines ownership.  Given the allegations and the registration applications attached to the Complaint, Gabb fails to allege a protectable interest in the Troomi mark (a necessary element under 15 U.S.C. § 1125(a)(1)(A)).[2]  Accordingly, the court dismisses claims one and two.

## **ORDER**

For the foregoing reasons, Defendants' Motion to Dismiss the Lanham Act claims (ECF

---

[2] Because Gabb has not adequately alleged that it owns the "Troomi" mark, the court does not reach the question of whether Gabb has alleged likelihood of confusion.

No. 17) is granted.

DATED this 14th day of January, 2022.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge